**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**v.**

**S. Robert DAVIS, et al., Defendants.**

**No. C–2–87–1127.**

United States District Court,
S.D. Ohio, E.D.

March 29, 1988.

John J. Chester, Chester, Hoffman & Willcox, Columbus, Ohio, for plaintiff.

Gerald A. Feffer, Williams & Connolly, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

This is an action for injunctive and other equitable relief filed by the Securities and Exchange Commission ("SEC") against S. Robert Davis, Charles R. Davis and Douglas A. Davis. Count I of the complaint alleges violations of Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1). Count II alleges violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2) and (3). Count III of the complaint claims violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, codified in 17 C.F.R. 240.-10b–5.

The complaint alleges that S. Robert Davis, a Columbus resident, was chairman of the board of Orange-co, Inc., a publicly held Delaware corporation with offices located in Columbus, Ohio. The common stock of Orange-co is traded on the New York Stock Exchange. Charles Davis was employed by Orange-co in the Columbus offices. Charles and Douglas Davis are sons of S. Robert Davis, and are also Columbus residents. The complaint further alleges that on or about June 27, 1984, S. Robert Davis publicly announced that Or-

ange-co had been approached by several large corporations with a view toward acquisition. Prior to July 31, 1984, S. Robert Davis learned that merger negotiations had terminated, and he disclosed this information to Charles and Douglas Davis. On July 31, 1984, five thousand shares of Orange-co stock were sold from the account of Charles Davis at $11\frac{5}{8}$ per share. On August 8, 1984, five thousand shares of Orange-co stock were sold from the account of Douglas Davis at $12\frac{1}{4}$ per share. The above shares were allegedly owned at one time by S. Robert Davis and were purportedly gifted to Charles and Douglas Davis. On August 22, 1984, S. Robert Davis publicly announced that merger negotiations had terminated, and the average price of Orange-co common stock dropped to approximately $9\frac{3}{8}$ per share. The complaint alleges that defendants employed a scheme to defraud, and that they improperly benefitted from the failure to disclose material information prior to the sale of the shares.

Several motions to dismiss have been filed by defendant S. Robert Davis. Defendant Charles Davis has filed a motion to dismiss and has moved to join in motions to dismiss filed by S. Robert Davis. The motions of Charles Davis to adopt motions to dismiss filed by S. Robert Davis are hereby granted. The motions to dismiss are now before the court for decision.

## 1. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants have moved for dismissal for lack of subject matter jurisdiction. Defendants allege that the civil enforcement authority vested in the SEC constitutes an unconstitutional delegation of executive authority because the SEC is not required to obtain the approval of some official or agency within the Executive Branch prior to bringing a civil injunctive enforcement action.

Other courts have recently rejected the position advanced by defendants. In *Securities and Exchange Commission v. Warner*, 652 F.Supp. 647 (S.D.Fla.1987) the court held that the authority of the SEC to

seek injunctive relief does not interfere with the power of the president to enforce the laws. The court noted that the holdings in *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) and *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) were distinguishable, as those cases concerned officers who were appointed or removed by Congress, whereas the President appoints the SEC Commissioners pursuant to 15 U.S.C. § 78d(a), and although the statute is silent on the removal of Commissioners, Congress may typically remove such officers only for impeachable offenses. *Securities and Exchange Commission v. Warner, supra* at 648–649. Indeed, the Supreme Court in *Bowsher v. Synar, supra,* 106 S.Ct. at 3188, n. 4, specifically stated that the court's holding did not address the status of independent agencies.

Similarly, in *Securities and Exchange Commission v. Blinder, Robinson & Company, Inc.*, 681 F.Supp. 1 (D.D.C.1987) the court upheld the authority of the SEC to seek judicial enforcement of its subpoenas. *Cf. Federal Trade Commission v. American National Cellular, Inc.*, 810 F.2d 1511 (9th Cir.1987).

While defendants argue that the "executive power" and "take care" clauses confer exclusive power upon the President to execute all of the laws, the Supreme Court has recognized that the powers assigned to the three branches are not "hermetically" sealed from each other. *INS v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1982). The Supreme Court has acknowledged the importance of an independent agency's ability to seek judicial relief. *See, FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966).

■ The cases relied upon by defendants do not expressly decide the scope of powers exercised by independent agencies such as the SEC. Rather, those cases involve situations where Congress has reserved to itself the performance of duties constitutionally assigned to the Executive Branch or the power to appoint and discharge officers who have been delegated executive duties.

Here, no legislative control is asserted over the enforcement activities of the SEC, nor has Congress retained the power to appoint or remove the Commissioners. Even if it is assumed that the Commissioners may only be removed for cause, they remain within the control of the Executive Branch, and the SEC's exercise of civil enforcement responsibilities does not constitute an unconstitutional delegation of enforcement authority.

The SEC is also a proper party to seek injunctive relief. The SEC is authorized pursuant to 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(d) to bring an action for injunctive relief in district court. The SEC has the necessary legal capacity to bring this action.

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## 2. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR ILLEGAL INSIDER TRADING

■ A complaint may not be dismissed for failure to state a claim under Fed.R. Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts to support a claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendants claim that the complaint fails to adequately allege a breach of fiduciary duty on the part of S. Robert Davis, or that S. Robert Davis received a benefit as a result of the disclosure of inside information.

■ A duty to disclose before trading on material nonpublic information arises from the existence of a fiduciary relationship. *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). The corporate insider is forbidden under his fiduciary relationship from personally using undisclosed corporate information to his advantage, and from giving such information to an outsider for the same improper purpose of exploiting the information for personal gain. *Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983). The tippee's duty to disclose is derived from that of the insider's duty. Therefore, the tippee assumes the insider's fiduciary duty only when the insider has breached his fiduciary duty and the tippee knows or should know that there has been a breach. *Id.* at 659–660, 103 S.Ct. at 3263–3264. In order for a breach of duty to occur, the insider must personally benefit, directly or indirectly, from his disclosure. *Id.* at 662, 103 S.Ct. at 3265. A direct profit to the insider is not always needed, rather the "elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend." *Id.* at 664, 103 S.Ct. at 3266.

■ The court finds that the complaint in this case is sufficient to allege that defendant S. Robert Davis had a fiduciary relationship with Orange-co, that he breached that fiduciary duty by disclosing material nonpublic information, and that defendants Charles Davis and Douglas Davis knew or should have known of the breach. The complaint is also sufficient to allege that S. Robert Davis directly, or indirectly, through the "gift theory," received a benefit as a result of the disclosure of confidential information. The complaint alleges the necessary elements for tipper and tippee insider trading liability, and defendants' motion for failure to state a claim is denied.

## 3. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR INJUNCTIVE RELIEF

■ Defendants have moved for dismissal, alleging that the complaint fails to state an adequate claim for injunctive relief. In order to obtain injunctive relief, the SEC must show a reasonable and substantial likelihood that defendants, if not enjoined, would violate the securities laws in the future. *Securities and Exchange Commission v. Washington County Utility District*, 676 F.2d 218 (6th Cir.1982). Factors to be considered include: 1) the egregiousness of the violations; 2) the isolated or repeated nature of the violations; 3) the degree of scienter involved; 4) the sincerity of the defendant's assurances, if

any, against future violations; 5) the defendant's recognition of the wrongful nature of his conduct; 6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations; and 7) the defendant's age and health. *Securities and Exchange Commission v. Youmans*, 729 F.2d 413 (6th Cir.1984).

Defendants claim that they are no longer associated with Orange-co, and that therefore the possibility of future violations is slight. A change of occupation, without more, will not provide a complete defense to the issuance of an injunction. *Securities and Exchange Commission v. Youmans, supra* at 415. Defendants also claim that allegations of one violation is not sufficient. However, under *Youmans*, the isolated or repeated nature of a violation is but one factor to consider in determining the propriety of injunctive relief and no one factor is determinative of whether injunctive relief is appropriate. *Id.*

■ The complaint alleges that defendants, if not enjoined, will continue to engage in acts similar to those violations alleged in the complaint. The complaint is sufficient to state a claim for injunctive relief, and defendants' motion to dismiss on that ground is denied.

## 4. MOTION TO DISMISS FOR FAILURE TO ALLEGE MATERIALITY

Defendants have moved to dismiss the complaint on the basis that the information concerning the cessation of merger negotiations was not material as a matter of law.

The Supreme Court recently addressed the concept of materiality as applied to merger negotiations in the context of § 10(b) and Rule 10b–5 in *Basic Incorporated v. Levinson*, — U.S. —, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Prior to *Levinson*, there had been a conflict among the circuits as to which test of materiality applied to merger negotiations. Some circuits had adopted the "agreement-in-principle" test, under which preliminary merger negotiations were not material as a matter of law until an agreement as to the price and structure of the transaction had been

reached between the parties. *See e.g., Greenfield v. Heublein, Inc.*, 742 F.2d 751 (3rd Cir.1984). The Sixth Circuit in *Levinson* rejected the agreement-in principle test and held that information concerning merger negotiations became material when a statement was made denying that the negotiations were taking place. *Levinson v. Basic Incorporated*, 786 F.2d 741 (6th Cir. 1986).

The Supreme Court rejected both the agreement-in-principle test and the rule applied by the Sixth Circuit. *Basic Incorporated v. Levinson*, — U.S. at —, 108 S.Ct. at 986. Instead, the court held that materiality in the merger context depends upon a balancing of the indicated probability that the merger will occur and the anticipated magnitude of the merger in light of the totality of the company activity. *Id.* at —, 108 S.Ct. at 987. The Supreme Court went on to state, *Id.:*

> Whether merger discussions in any particular case are material therefore depends on the facts. Generally, in order to assess the probability that the event will occur, a factfinder will need to look to indicia of interest in the transaction at the highest corporate levels. Without attempting to catalogue all such possible factors, we note by way of example that board resolutions, instructions to investment bankers, and actual negotiations between the principals or their intermediaries may serve as indicia of interest. To assess the magnitude of the transaction to the issuer of the securities allegedly manipulated, a factfinder will need to consider such facts as the size of the two corporate entities and of the potential premiums over market value. No particular event or factor short of closing the transaction need be either necessary or sufficient by itself to render merger discussions material.

> As we clarify today, materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information. The fact-specific inquiry we endorse here is consistent with the approach a number of courts

have taken in assessing the materiality of merger negotiations.

▮ The complaint in this case alleges that material information was not disclosed prior to trading. Upon considering the allegations plead in the complaint, the court is unable to say as a matter of law that plaintiff could prove no set of facts establishing materiality. *Conley v. Gibson, supra.* Under such circumstances, this court would be acting prematurely in dismissing the complaint short of the fact-specific inquiry mandated by the Supreme Court. Defendants' motion to dismiss for failure to allege materiality is denied.

### 5. MOTION TO DISMISS FOR FAILURE TO PLEAD FRAUD

Defendants allege that the complaint does not allege fraud with particularity as required by Fed.R.Civ.P. 9(b). Defendants note that the complaint does not state specifically the time and location of the alleged transfer of inside information. Defendants further argue that the complaint is insufficient as based upon information and belief.

▮ In *Bender v. Southland Corp.,* 749 F.2d 1205 (6th Cir.1984), the court stated that while intent may be averred generally, plaintiff must allege the time, place and contents of the misrepresentation in order to satisfy Rule 9(b). However, Rule 9(b) must be read in conjunction with Fed. R.Civ.P. 8(a), which requires only a short and plain statement of the claims showing that the pleader is entitled to relief. *In re Consumers Power Company Securities Litigation,* 105 F.R.D. 583, 591 (E.D.Mich. 1985). Rule 9(b) requires only that "circumstances" be pleaded, not a detailed statement of evidence. *Roger v. Lehman Brothers Kuhn Loeb Inc.,* 604 F.Supp. 222 (S.D.Ohio 1984). While as a general rule allegations based upon information and belief fail to satisfy Rule 9(b), an exception to this rule exists for matters which are peculiarly within the knowledge of the opposing party, so long as the complaint indicates the facts upon which the belief is based. *In re Consumers Power Company Securities Litigation, supra* at 591–592.

▮ Upon examination of the complaint, the court concludes that the allegations meet the requirement of Rule 9(b). The complaint alleges the factual basis of the fraud with sufficient particularity, and affords the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. at 47, 78 S.Ct. at 103. Defendants' motion to dismiss under Rule 9(b) is denied.

### 6. MOTION TO DISMISS COUNT II FOR FAILURE TO ALLEGE AIDER AND ABETTOR LIABILITY

▮ Defendant S. Robert Davis moves to dismiss Count II of the complaint for failure to allege aider and abettor liability and scienter. Count II alleges violations under 15 U.S.C. §§ 77q(a)(2) and (3). Negligence is sufficient for violations under §§ 77q(a)(2) and (3). *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). However, defendant contends that he was not charged as the seller of the shares, and therefore he could only be liable as an aider and abettor. To establish liability under an aider and abettor theory, it must be shown: 1) that some other party has committed a securities law violation; 2) that the aider and abettor had a general awareness that his role was part of an overall activity that is improper; and 3) that the aider and abettor knowingly and substantially assisted the violation. *Moore v. Fenex, Inc.,* 809 F.2d 297 (6th Cir.1987). In regard to the third factor, plaintiff must show that the silence of the accused aider and abettor was consciously intended to aid the securities law violation, and must prove a culpable state of mind or conduct from which a culpable state of mind can be inferred. *Securities and Exchange Commission v. Washington County Utility District, supra* at 226; *Securities and Exchange Commission v. Coffey,* 493 F.2d 1304 (6th Cir.1974).

The court, upon considering the above elements, has serious reservations concerning the sufficiency of the complaint if indeed plaintiff has sought to allege aider and abettor liability. Plaintiff contends,

however, that Count II of the complaint alleges liability as a principal. Plaintiff is correct in stating that primary liability does not necessarily require direct contact with the purchasers of the shares. *See, Securities and Exchange Commission v. Holschuh,* 694 F.2d 130 (7th Cir.1982). As the Sixth Circuit noted in *Securities and Exchange Commission v. Washington County Utility District, supra* at 223:

> Direct contacts require neither physical presence nor face to face conversation. A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant.

■ Count II is sufficient to allege that defendant acted as a primary participant in securities law violations. Whether plaintiff will ultimately succeed in proving those allegations must await later proceedings. At this point, the court is unable to say that plaintiff could prove no set of facts which could establish liability. Defendant's motion to dismiss Count II is denied.