### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### Paul A. BILZERIAN, et al., Defendants.

### No. CA 89–1854.

United States District Court,
District of Columbia.

Nov. 2, 1990.

---

sons set forth below, defendants' motion is denied.

## Background

On June 9, 1989, a jury in the United States District Court for the Southern District of New York found defendant Paul A. Bilzerian guilty on nine counts which charged violations of the federal securities laws.[1]  Three weeks after the criminal verdicts, plaintiff Securities and Exchange Commission (SEC) brought this action against Bilzerian, and others,[2] for alleged violations of the federal securities laws in connection with the securities of seven different companies.[3]  The SEC in this civil action seeks a permanent injunction prohibiting Bilzerian from committing further violations of the securities laws, and the disgorgement and return to injured shareholders of approximately $31 million.

## Discussion

Defendants move to dismiss the SEC's complaint for lack of subject matter jurisdiction.  Defendants note that Article II of the Constitution commands the President to take care that the laws be faithfully executed and vests the President with "executive Power."  Under § 21(d) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78u(d) (1981), Congress vested the SEC, rather than the President, with civil enforcement authority for alleged violations of the federal securities laws.  Defendants argue that this delegation of enforcement power to an independent agency, such as

Catherine M. Shea, SEC, Washington, D.C., for plaintiff.

Arthur F. Mathews, Washington, D.C., for Bilzerian, HPC.

David A. Tallant, Sacramento, Cal., pro se.

### MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This action is now before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction.  For the rea-

1.  Bilzerian was convicted on two counts of securities fraud in violation of 15 U.S.C. § 78j(b) (1988); five counts of making false statements to government agencies with respect to securities of the Hammermill Paper Company (Hammermill) and Cluett, Peabody & Co., Inc. (Cluett), in violation of 18 U.S.C. § 1001 (1988); and two counts of criminal conspiracy in violation of 18 U.S.C. § 371 (1988), one regarding Cluett and Hammermill and the other regarding Armco, Inc. and H.H. Robertson Co.

On September 27, 1989, Bilzerian was sentenced by Judge Robert J. Ward to four years in prison, a $1.5 million fine, two years of probation, and 250 hours of community service. Bilzerian has appealed his convictions.

2.  Paul Bilzerian, David A. Tallant, Bilzerian & Mack Associates, HPC Acquisition Company,

Edward J. DeBartolo, Sr., William D. Moses, and Richard S. Sokolov all were originally named as defendants in this action.  Defendants DeBartolo, Moses, and Sokolov are no longer parties to this action;  each entered into settlements with the SEC in 1989.  Tallant is charged with aiding and abetting Bilzerian in the violation of the securities laws with respect to the acquisition of Hammermill stock, and of playing an important role in a number of other transactions at issue in this case.  Tallant has joined in Bilzerian's motion to dismiss.

3.  This action involves transactions in the securities of the four companies at issue in the criminal case, as well as transactions in the securities of Singer Co., Pay N' Pak Stores, Inc., and Fortune Financial Group, Inc.

**16**

the SEC, is unconstitutional, as it allegedly violates the separation of powers doctrine.

The creation, composition, and powers of the SEC are found in the Securities Exchange Act of 1934. Under the Act, the Commission consists of five members who are appointed by the President and confirmed by the Senate. The commissioners' five-year terms are staggered, and no more than three of the members may belong to the same political party. While the Act does not expressly give the President the power to remove a commissioner, it is generally accepted that the President may remove a commissioner for inefficiency, neglect of duty, or malfeasance in office.[4] *See S.E.C. v. Blinder, Robinson & Co.*, 855 F.2d 677, 681 (10th Cir.1988), *cert. denied*, 489 U.S. 1033, 109 S.Ct. 1172, 103 L.Ed.2d 230 (1989).

The Supreme Court has recognized that the powers assigned to the three branches are not "hermetically" sealed from each other. *I.N.S. v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1982). At the same time, however, the Court will invalidate statutes in which Congress retains the power of removal of an officer charged with the execution of the laws, except by impeachment and conviction. *Bowsher v. Synar*, 478 U.S. 714, 726, 106 S.Ct. 3181, 3188, 92 L.Ed.2d 583 (1986). "To permit the execution of the laws to be vested in an officer answerable only to Congress would, in practical terms, reserve in Congress control over the execution of the laws." *Id.*

In *Bowsher*, the Court held that Congress unconstitutionally delegated the authority to initiate spending reductions to the Comptroller General. *Bowsher*, 478 U.S. at 726–27, 106 S.Ct. at 3187–88.[5] The Court concluded that by placing responsibility for execution of the Balanced Budget and Emergency Deficit Control Act in the hands of an officer who is subject to removal only by Congress, Congress in effect retained control over the execution of the Act and intruded into the executive function. *Id.* at 734, 106 S.Ct. at 3191.

Similarly, in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court held that the civil enforcement authority of the Federal Election Commission (FEC) was unconstitutional as several members of the FEC were appointed by Congress, rather than by the President. It is important to note, however, that the Court did not render the delegation of enforcement authority to the Commission as unconstitutional *per se*. *See S.E.C. v. Warner*, 652 F.Supp. 647, 649 (S.D.Fla. 1987).

Unlike the situation in *Bowsher* and *Buckley*, Congress has neither the power to appoint or remove, except for impeachable offenses, the commissioners of the SEC. *Warner*, 652 F.Supp. at 649. Furthermore, Congress may, without violating Article II, authorize an independent agency to bring civil law enforcement actions even though the President's removal power is restricted.[6] *Blinder*, 855 F.2d at 682 (cit-

---

4. Defendants concede that the President has the power to remove commissioners for cause. *See* Defendants' Memorandum in Support of Motion to Dismiss for Lack of Subject–Matter Jurisdiction (Defts' Memo) at 13. Furthermore, Congress has stated: "Members of the ... Securities and Exchange Commission may be removed by the President, under present law, for inefficiency, neglect of duty, or malfeasance in office." H.Rep. No. 2070, 86th Cong., 2d Sess. 14 (1960).

5. The Comptroller General is nominated by the President from a list of three individuals recommended by the Speaker of the House of Representatives and the President *pro tempore* of the Senate. 31 U.S.C.A. § 703(a)(2) (1983). The Comptroller General is confirmed by the Senate and is removable from office only at the initiative of Congress, either by impeachment or joint resolution. 31 U.S.C.A. 703(e)(1).

6. Congress' ability to limit the President's power of removal was upheld in *Humphrey's Executor* and, more recently, in *Morrison*. In *Humphrey's Executor*, the relevant statute similarly permitted removal of Federal Trade Commission members by the President, but only for inefficiency, neglect of duty, or malfeasance in office. The Court recognized the intent of Congress to create a commission that was independent of executive authority, except in its selection, and ruled that the concept of a member continuing in office at the mere will of the President might thwart the very ends Congress sought to realize. *See Blinder*, 855 F.2d at 681. Under the independent counsel statutes that were challenged in *Morrison*, the President has virtually no removal power. Under 28 U.S.C.A. § 596(a)(1), an independent counsel may be removed, other than by impeachment and convic-

ing *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) and *Humphrey's Executor*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935)). *Morrison* instructs that the real question to be answered is whether the removal restrictions impede the President's ability to perform his constitutional duty. 108 S.Ct. at 2597.

With respect to the SEC, the President has the power to appoint the SEC commissioners, to choose the Commission's chairman who has broad powers concerning the operation and administration of the Commission, and to remove a commissioner for inefficiency, neglect of duty, or malfeasance in office. *See Blinder*, 855 F.2d at 682. These powers give the President sufficient control over the SEC to ensure that the securities laws are faithfully executed. *Id.* Moreover, the removal restrictions do not impede the President's ability to perform his constitutional duties. *Id.*

In conclusion, it is clear that the SEC is within the Executive Branch, as Congress has no power or control over the enforcement activities of the SEC.[7] *S.E.C. v. Davis*, 689 F.Supp. 767, 771 (S.D.Ohio 1988). Since the SEC's exercise of civil enforcement responsibilities does not constitute an unconstitutional delegation of enforcement authority, the Commission is authorized to bring this action, and defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

SO ORDERED.

tion, only by the Attorney General and only for good cause, physical disability, or mental incapacity.

7. Defendants argue that the Commission, unlike the independent counsel, is under the control of Congress. Specifically, they state that: "Congress has significant leverage over the SEC, and has historically used this leverage to intervene in the SEC's law enforcement process." Defts' Memo at 8–9. In support of this assertion, defendants point to a series of letters between Congress and the SEC, as well as a series of newspaper articles. *See* Defts' Memo at 17, n. 34 and Ex. A. These articles and letters demon-

strate instances in which Congress urged the SEC to commence enforcement actions.

What defendants fail to understand is that these articles and letters are merely part of the political process. Furthermore, Congress has absolutely no statutory authority to order the SEC to commence an investigation or to commence an enforcement action for federal securities law violations. Significantly, the Supreme Court in *Morrison* upheld the independent counsel statutes in spite of the fact that under 28 U.S.C.A. § 592(g), the House or Senate Judiciary Committees may request that the Attorney General apply for the appointment of an independent counsel.